A90A1403. CENTRAL OF GEORGIA RAILROAD COMPANY v. LIGHTSEY.
(400 SE2d 652)

MCMURRAY, Presiding Judge.

In *Central of Ga. R. Co. v. Lightsey*, 189 Ga. App. 44 (374 SE2d 787), this Court reversed the judgment entered in favor of plaintiff on his Federal Employers' Liability Act ("FELA") claim and remanded this case for proper consideration of a motion to recuse the trial judge. Other issues raised by the defendant in that appearance were not decided by this Court at that time. In reversing in that appearance, this Court ruled that if the motion was denied, a new appeal could be taken following the reentry of the judgment.

The motion to recuse was heard by a judge of another circuit (Atlantic Circuit). Evidence was submitted in support of the motion. The motion was denied; the judgment was reentered; and defendant appealed once again. *Held*:

1. Defendant assigns error upon the denial of the motion to recuse. We find no error.

The motion to recuse was based on two contentions: (1) that all

FELA cases in which the claimants were represented by plaintiff's attorneys were assigned to this particular trial judge by a circumvention of the local rules and (2) that this trial judge was personally biased in favor of the plaintiff's attorneys and against defendant.

With regard to the first contention, there was no evidence that the trial judge played any part in the system of assignment of any cases which came to him or had any prior knowledge of the assignments.

With regard to the second contention, defendant's counsel testified that the judge's demeanor and attitude in other cases demonstrated bias against defendant. Defendant argued that additional evidence of bias could be derived from the trial judge's failure to take any action when he was confronted with data concerning the assignment of FELA cases. But six of the jurors who sat on this case testified that they discerned no bias on the part of the trial judge for or against either party.

Our Supreme Court deems the federal rule on motions to recuse "to be the most acceptable." *State v. Fleming*, 245 Ga. 700 (1), 702 (267 SE2d 207). We deem it appropriate, therefore, to look to the federal courts to determine the standard of review when it comes to motions to recuse.

The federal appellate courts employ an abuse of discretion standard in reviewing rulings made upon motions to recuse. See, e.g., *United States v. Kelly*, 888 F2d 732, 745 (11th Cir. 1989); *Giles v. Garwood*, 853 F2d 876, 878 (11th Cir. 1988). "The abuse of discretion standard has been described as allowing a range of choice for the [lower] court, so long as that choice does not constitute a clear error of judgment. [Cit.]" *United States v. Kelly*, supra at 745.

Given the evidence adduced upon the recusal motion, we find no error of judgment on the part of the judge who heard the motion. After all, defendant failed to demonstrate *personal*, extrajudicial bias on the part of the trial judge. See *Smith v. State*, 250 Ga. 438 (1), 439 (298 SE2d 482); *Carter v. State*, 246 Ga. 328, 329 (271 SE2d 475). See also *United States v. Jeffers*, 532 F2d 1101, 1112 (7th Cir. 1976) (prior judicial actions are insufficient to overcome the presumption of impartiality and demonstrate personal bias).

Our conclusion is bolstered by our own review of the record and the trial transcript. We find nothing which would demonstrate that the trial judge was personally (as opposed to judicially) biased against defendant.

2. In several enumerations of error, defendant asserts the trial court's charge was erroneous. A brief recitation of the facts will aid our consideration of the alleged errors pertaining to the charge.

Plaintiff supervised a small crew of railroad employees. On the day in question, plaintiff and his crew were using a motorcar and

pushcar to pick up scrap angle bars on defendant's tracks in Alabama.

Just before lunchtime, plaintiff and his crew took a ride on the motorcar and pushcar to get gas (for the motorcar), and "some Coca Colas and dinner" at a store. The store was approximately two miles from the work site.

The motorcar led the way, towing the pushcar. The motorcar was about five feet high; the pushcar stood about two-and-a-half feet off the ground. The motorcar was equipped with a beacon light and a headlight. It did not have a warning horn.

The motorcar did not have enough seats for plaintiff's crew. So plaintiff and another employee sat on the pushcar in spite of a railroad rule forbidding employees to sit on rolling equipment without a seat. That was not unusual. Defendant's employees rode on the pushcars on occasion.

The crew arrived at the store and purchased gas and drinks. While the men were taking their lunch break plaintiff's supervisor rode by. He asked what was up. Plaintiff responded that the motorcar needed gas and the men needed cold drinks. The supervisor told plaintiff to go back to work picking up scrap angle bars. The supervisor did not actually see anyone sitting on the pushcar at that time.

The men got back on the motorcar and pushcar and headed for the work site. This time, the pushcar led the way. It was being pushed along by the motorcar.

The crew approached a dirt crossing. It was difficult for plaintiff to see whether there was traffic at the crossing because vegetation had been allowed to grow on the side of the tracks.

Before entering the crossing, plaintiff signaled the operator of the motorcar to stop. According to plaintiff, the motorcar stopped short of the crossing but started sliding through it.

About one-third of the way into the crossing, plaintiff saw a pickup truck coming right at him. He tried to jump out of the way but he could not. He was struck and injured by the pickup truck.

(a) The trial judge instructed the jury that the Occupational Safety & Health Administration ("OSHA") enacted a regulation which provides: "All vehicles shall be equipped with an adequate audible warning device at the operator's station and in an operable condition." 29 CFR § 1926.601 (b) (3). The trial judge went on to charge that, if defendant violated the OSHA regulation, defendant would be deemed negligent as a matter of law and if plaintiff was injured in whole or in part as a result of any such violation plaintiff would be entitled to recover "the full undiminished award of his damages, if any."

Defendant contends the trial court's OSHA charge was given erroneously. We agree.

OSHA regulations do not "apply to working conditions of em-

ployees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." 29 USC § 653 (b) (1). Was OSHA's authority to regulate safety conditions preempted in this FELA case?

The Federal Railroad Administration ("FRA") is authorized to enact and enforce regulations affecting the working conditions of railroad employees. 45 USC § 421 et seq. In a policy statement examining OSHA's role with regard to railroad operations, the FRA concluded: "FRA has exercised and continues to exercise its jurisdiction over the safety of railroad operations." 43 FR 10583, 10586.

" '[R]ailroad operations' refers to the movement of equipment over the rails. The term 'safety' includes health-related aspects of railroad safety to the extent such considerations are integrally related to operational safety hazards or measures taken to abate such hazards. The term 'safety of railroad operations,' then, relates to the conditions and procedures necessary to achieve the safe movement of equipment over the rails." 43 FR 10583, 10585.

To meet its responsibilities over the safety of railroad operations, the FRA enacted safety regulations for track motorcars and pushcars. These regulations outline the safety equipment for such vehicles when they are coupled and moving together. 49 CFR §§ 231.25; 231.26. The regulations are consistent with the FRA's conclusion that it "is responsible for all vehicles that are utilized on [tracks] during the period of such usage." 43 FR 10583, 10588.

In view of FRA's policy statement and its enactment of regulations governing the safe operation of motorcars and pushcars, we conclude that OSHA's authority to regulate safety conditions in this case was preempted. *Velasquez v. Southern Pac. Transp. Co.*, 734 F2d 216 (5th Cir. 1984); *Southern Pac. Transp. Co. v. Usery*, 539 F2d 386, 391 (5th Cir. 1976). Compare *Pratico v. Portland Terminal Co.*, 783 F2d 255 (1st Cir. 1985), in which no regulations were enacted by the FRA covering the procedure and equipment used by plaintiff. It follows that the trial court's charge to the jury was erroneous and the judgment of the trial court must be reversed. *Velasquez v. Southern Pac. Transp. Co.*, 734 F2d 216, 219, supra.

(b) Citing 49 CFR § 213.37 (c) ("Vegetation on railroad property which is on or immediately adjacent to roadbed must be controlled so that it does not . . . (c) Interfere with railroad employees performing normal trackside duties;") promulgated by the FRA, the trial court charged the jury that it was incumbent upon defendant to control vegetation on its property so plaintiff could perform his duties safely; and that if plaintiff was injured because defendant violated its duty to control vegetation, and that plaintiff was injured in whole or in part as a result of the violation plaintiff would be entitled to recover

an undiminished amount of damages if any. Defendant contends the charge was improper because: (1) Plaintiff was not performing track-side duties when he was struck by the pickup truck and (2) plaintiff was not entitled to undiminished damages in any event.

We find the charge to be applicable to the facts in this case and a correct statement of the law. The evidence authorized the jury to conclude that plaintiff was injured because vegetation growing along the side of the tracks interfered with plaintiff's view of the crossing. Plaintiff was performing "trackside duties" at that time since he was returning to the work site after purchasing gas for the motorcar.

We reject defendant's contention that plaintiff was not performing trackside duties simply because he was riding on a pushcar. Giving the term "trackside duties" its logical meaning, we think it extends to duties performed on, as well as on the side of, the tracks.

Where a railroad employee is injured because a railroad violated a statute enacted for the safety of railroad employees, no such employee shall be held to have been guilty of contributory negligence. 45 USC § 53. The same holds true if the railroad violates a regulation issued by the Secretary of Transportation. 45 USC § 437. Accordingly, the trial court properly charged that plaintiff's recovery was not to be diminished if the jury found that plaintiff was injured because the railroad violated 49 CFR § 213.37 (c).

Defendant also contends the charge was improper because no reference to the regulation was included in the pretrial order and defendant did not know that plaintiff was relying upon the regulation until plaintiff submitted his requests to charge. We need not consider this contention because the judgment is being reversed (pursuant to Division 2a, supra,) and, upon a retrial, defendant will not be surprised by plaintiff's reliance upon the regulation.

(c) The trial court charged the jury that it could return a verdict for plaintiff even though he may have violated a rule of the railroad if a person charged with enforcing the rule was aware of the violation but took no action. It cannot be said the charge was inapt in light of the evidence that plaintiff's supervisor saw plaintiff and his crew had ridden nearly two miles from the work site on the motorcar and pushcar. See *Central of Ga. R. Co. v. Mobley*, 6 Ga. App. 33 (3, 4) (64 SE 300).

(d) Defendant contends the trial judge should have instructed the jury pursuant to its request on the Alabama rules of the road to facilitate consideration of the truck driver's concurring negligence. We disagree. The truck driver was not named as a party in this FELA case. Accordingly, his negligence vel non was of no import. See *Kansas City Southern R. Co. v. Nectaux*, 26 F2d 317, 318, 319 (5th Cir. 1928) ("A railroad is charged with the absolute and continuing duty of using reasonable care to furnish its employees a clear track over

which to run. If the breach of this obligation is a concurring cause, the negligence of another will not defeat a recovery.")

(e) Whether defendant was negligent, or plaintiff was solely negligent, were questions to be decided by the jury. *Atlantic Coast Line R. Co. v. Thompson*, 213 Ga. 70 (97 SE2d 135). Accordingly, the trial court erred in failing to charge the jury, pursuant to defendant's request, that it would not be authorized to return a verdict for plaintiff if it found that he violated a railroad safety rule and such violation was the sole proximate cause of his injuries. See *Atlantic Coast Line R. Co. v. Thompson*, 213 Ga. 70, supra, reversing *Thompson v. Atlantic Coast Line R. Co.*, 94 Ga. App. 683, 685 (96 SE2d 206). Because we are reversing the judgment of the trial court on other grounds (see Division 2a, supra), however, we need not determine whether the failure to charge the jury pursuant to defendant's request was harmless error.

3. Inasmuch as defendant did not produce and examine any employees who were present when plaintiff was injured, it cannot be said the trial court erred in charging OCGA § 24-4-22. *Western & Atlantic R. Co. v. Morrison*, 102 Ga. 319 (1) (29 SE 104). See also *Southern R. Co. v. Acree*, 9 Ga. App. 104 (1) (70 SE 352).

4. Defendant contends the trial court erred in refusing to permit defendant to show that plaintiff was dismissed from his employment while permitting plaintiff to show what wages he would have earned as an employee of defendant following his dismissal. This contention is without merit. Plaintiff admitted on cross-examination that he received a letter of dismissal from defendant. Besides, the trial court ultimately struck plaintiff's testimony concerning the wages he would have received from defendant on hearsay grounds.

5. Plaintiff testified that he was and remained disabled following the incident in question. Defendant sought to impeach plaintiff by showing that, to obtain unemployment compensation benefits, he signed documents stating he was "ready willing and able to work." The trial court would not permit defendant to make reference to the unemployment compensation benefits. But the trial court did permit defendant to ask plaintiff if he signed documents (once a week for six months and again once a week for 26 weeks) certifying he was "ready willing and able to work." Plaintiff admitted that he did sign the documents. Defendant contends the trial court erred by refusing to allow it to impeach plaintiff by showing he signed the documents to obtain unemployment compensation benefits.

"In all cases where the object sought to be proved can be proved without violation of a rule of evidence designed to prohibit prejudice, it should be done so, and the rule not broken unless by necessity, or where the merit of the evidence clearly outweighs its prejudice." *Fred F. French Mgmt. Co. v. Long*, 169 Ga. App. 702, 703 (2), 704 (314

SE2d 666). Weighing the merit against the prejudice of the proffered evidence, the trial court struck a fair balance between defendant's right to bring forth evidence of impeachment (see *Shirley v. Oglesby*, 176 Ga. App. 621 (1) (336 SE2d 820)) and the prejudicial impact of evidence concerning unemployment compensation benefits in a FELA case. See *Eichel v. N. Y. Central R. Co.*, 375 U. S. 253 (84 SC 316, 11 LE2d 307).

The trial court permitted defendant to impeach plaintiff. At the same time, it protected plaintiff from the prejudicial impact of collateral social insurance benefits. See *Eichel v. N. Y. Central R. Co.*, 375 U. S. 253, supra. We find no error in this regard.

6. Because the judgment of the trial court is reversed (see Division 2a, supra), we need not consider the remaining enumerations of error. They are either moot or unlikely to recur upon retrial.

*Judgment reversed. Carley, C. J., and Sognier, J., concur.*

DECIDED NOVEMBER 27, 1990 —
REHEARING DENIED DECEMBER 11, 1990 —

*Branch, Pike & Ganz, Burt DeRieux, Keith J. Reisman, Eileen Crowley, Alston & Bird, Jack H. Senterfitt, Richard T. Fulton*, for appellant.

*Kelly, Denny, Pease & Allison, Billy E. Moore, Paul R. Bennett, Jones, Bordeaux & Associates, John Wright Jones, Noble Boykin*, for appellee.